CHARLES PARKIN, City Attorney
HOWARD D. RUSSELL, Deputy City Attorney
State Bar No. 163595
333 West Ocean Boulevard, 11th Floor
Long Beach, California 90802-4664
Telephone:  (562) 570-2200
Facsimile:  (562) 436-1579
Email:      howard.russell@longbeach.gov

Attorneys for Defendants
CITY OF LONG BEACH, et al.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELO OSCAR BEDETTI<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LONG BEACH, et al.<br><br>Defendants. | Case No.:  CV14-09102 DMG (JCx)<br><br>Honorable Dolly Gee<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>FPTC:      April 4, 2017<br>Time:      2:00 p.m.<br>Ctrm:      8C (1st Street)<br><br>Trial Date: May 2, 2017<br>Time:      8:00 a.m.<br>Ctrm:      8C (1st Street) |

COME NOW, Defendants, CITY OF LONG BEACH, et al., and present their Memorandum of Contentions of Fact and Law:

### I.    FACTUAL CONTENTIONS
#### Investigation

On November 16, 2013, Long Beach Police Officers David Corcoran (CORCORAN) and Douglas Bacon (BACON) were investigating a report of possible domestic violence between a man and woman.  The investigation was being conducted in a parking lot off Pine Avenue in Long Beach. CORCORAN spoke with the man in the parking lot; BACON spoke with the woman in a nearby alley.

Long Beach Police Officers Roque Foster (FOSTER) and Alexander Saldana (SALDANA), who were on routine patrol nearby, stopped to find out what was happening. FOSTER AND SALDANA remained at the scene.

### Bedetti arrives

While Officers CORCORAN and BACON were still conducting their investigation, plaintiff Marcelo Bedetti (BEDETTI) drove into the parking lot and began to park his Jeep near where Officer CORCORAN was standing. BEDETTI is a South Gate Police Officer, but he was off-duty and with a friend, Felipe Baeza (BAEZA).

BEDETTI pulled into a parking spot and CORCORAN spoke to him about being too close to the car in the next space. BEDETTI backed out and prepared to park in another space.

Officer FOSTER was standing in the space that BEDETTI wanted to park in. BEDETTI got out of his Jeep to talk to FOSTER. BEDETTI was told that there was an ongoing police investigation, and that he was interfering with the investigation.

BEDETTI threatened to use force against the Long Beach officers if they attempted to detain him. When BEDETTI was questioned about his threat, he said he had a gun.

After BEDETTI got out of his Jeep, but before any force was used, Long Beach Police Officers Randall Beach (BEACH) and Jason Lehman (LEHMAN) arrived on scene.

### Use-of-Force

BEDETTI was directed to not move toward his vehicle. Disobeying those commands, BEDETTI began moving toward his vehicle. Afraid that BEDETTI was reaching for a gun, Officers CORCORAN and SALDANA took hold of BEDETTI's arms to handcuff him. BEDETTI resisted the handcuffing attempt, and the officers performed a takedown.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS
OF FACT AND LAW**

Only four of the officers were involved in the takedown: CORCORAN, SALDANA, BEACH, and LEHMAN.  Neither Officer BACON or Officer FOSTER used force or even touched Bedetti during the incident.

Officer BEACH only put his hand on BEDETTI's arm and shoulder and helped guide BEDETTI to the ground.  He used no other force.

Officer LEHMAN only assisted with the takedown.  He used no other force.

Officer SALDANA attempted a "control hold," and then participated in the takedown.  He used no other force.[1]

Officer CORCORAN attempted a "control hold," participated in the takedown, and held Bedetti's leg - which was in a cast - so that the leg would not be injured.

## Search and Arrest

After Bedetti was taken to the ground, officers searched him.  Officer BEACH found a handgun in Bedetti's pocket.  Bedetti was arrested for violating Cal. Pen. Code §148(a)(1).   He was released on his own recognizance; he spent no time in the Long Beach City Jail.

BEDETTI was ultimately charged by the Long Beach City Prosecutor's Office with violating Cal. Pen. Code §148(a)(1), and was prosecuted on that charge. A jury found Bedetti not guilty.

## Jim McDonnell

Jim McDonnell is the Sheriff of Los Angeles County.  At the time of the incident, he was Chief of the Long Beach Police Department.  He has no personal knowledge of the incident alleged in this case, and only learned about the incident after he left the Long Beach Police Department.

---

[1] Plaintiff alleges that Officer Saldana punched him in the face and the back of the head.  Officer Saldana denies this, and no one at the incident location - including Bedetti's passenger, Felipe Baeza, saw Officer Saldana punch Bedetti.

3

**DEFENDANTS' MEMORANDUM OF CONTENTIONS
OF FACT AND LAW**

## II. LEGAL BRIEF

### A. ISSUES OF LAW

BEDETTI has nine causes of action:

- Unreasonable seizure (4th Amendment) against all defendant officers;
- Excessive force, through 42 USC section 1983, against Officers BEACH, CORCORAN, LEHMAN, and SALDANA;
- Deprivation of free speech, through 42 USC section 1983, against all defendant officers;
- Supervisory liability, through 42 USC section 1983, against former Chief Jim McDonnell;
- *Monell* claim against the City of Long Beach;
- Bane Act claim against all defendant officers;
- Battery claim under state law against all defendant officers[2];
- False imprisonment claim under state law against all defendant officers; and
- Negligence against all defendants.

Defendants deny liability, deny that plaintiff's rights were violated, and contend that all actions – including force used – were lawful, justified, reasonable, and done in good faith.

---

[2] This claim should not include Officers BACON and FOSTER; the Court granted partial summary judgment in their favor on plaintiff's excessive force claim.

## 1. THERE IS NO FALSE ARREST UNDER THE 4TH AMENDMENT OR FALSE IMPRISONMENT UNDER STATE LAW

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *Dunaway v. New York*, 442 U.S. 200, 70 L.Ed.2d 824 (1979); *Illinois v. Gates*, 462 U.S. 213, 232, 76 L.Ed.2d 527, 544 (1983).

Probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest, see *Devenpeck v. Alford*, 543 U.S. 146, 153-55, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

Bedetti was arrested for violating Cal. Pen. Code §148(a)(1), which prohibits resisting, obstructing, or delaying officers in the performance of their duties.

- Officers told Bedetti that there was an ongoing police investigation; Bedetti did not leave.
- Bedetti told officers that he would defend himself and had a gun; he then moved toward his Jeep when the officers told him not to move.
- Bedetti resisted being handcuffed, and taking him to the ground required four police officers.

There was clearly probable cause, which is evidenced by the fact that Bedetti was criminally prosecuted and the charge was not dismissed by the Court.

The state law false arrest claims cannot proceed either because at the time of the arrest, the arresting officers "had reasonable cause to believe the arrest was lawful." See Cal. Pen. Code § 847(b), which states:

"There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer or federal criminal investigator or law enforcement

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

officer described in subdivision (a) or (d) of Section 830.8, acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances:

>   (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful."

If plaintiff alleges illegal detention, a detention requires only reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "provides that 'based on a reasonable and articulable suspicion, a police officer may make a brief stop or 'seizure' of the individual to investigate suspected past or present criminal activity.' [citation omitted.] Such a seizure will be upheld as constitutionally permissible so long as it was 'justified at its inception, and if so, . . . the action taken was reasonably related in scope to the circumstances which justified the interference.' [citation omitted.]" *United States v. Acosta-Colon*, 157 F.3d 9, 14 (9th Cir. 1998).

It is also clear that reasonable officers could have believed the detention/arrest was proper from the undisputed facts, and so they would be entitled to qualified immunity on this ground. *Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010); (citing *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part on other grounds by Pearson*, 129 S. Ct. at 818-22). The dispositive question is "whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis in original).

**2. THERE IS NO LIABILITY FOR EXCESSIVE FORCE OR BATTERY**

Whether use of force is reasonable depends on a number of factors, including:

the severity of the crime, whether the suspect was actively resisting arrest, and whether the suspect poses an immediate threat to the safety of the officers. *Graham v. Conner*, 490 U.S. 386, 396 (1989). The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements during situations that are tense and rapidly evolving. *Graham* at 396-397. According to Graham, objective reasonableness must be evaluated in light of the particular circumstances "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." (490 U.S. at p. 394)

The important factors to be considered when deciding how much force can be used to apprehend a suspect include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the offices or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (490 U.S. at p. 394). But, courts look to the totality of the circumstances, including any factors relevant to the particular case. *Marquez v. City of Phoenix*, 2012 U.S. App. LEXIS 20766 *16 (9th Cir. 2012).

Ultimately, the " 'most important' " Graham factor is whether the suspect posed an " 'immediate threat to the safety of the officers or others.' " *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc) [internal citations omitted]. Also, "while the existence of less forceful options to achieve the governmental purpose is relevant, '[p]olice officers…are not required to use the least intrusive degree of force possible." *Marquez v. City of Phoenix*, 2012 U.S. App. LEXIS 20766, *13, citing *Forrester v. City of San Diego,* 25 F.3d 804, 807-08 (9th Cir. 1994).

Here, Officers CORCORAN, SALDANA, BEACH, and LEHMAN were confronted with the immediate danger of Bedetti threatening to use a gun - in a public place - to defend himself. Officers gave Bedetti commands, which he ignored. Officers then attempted low-level control holds, which were ineffective. Only then, did the officers perform a takedown. The officers used only the minimum force necessary to take plaintiff into custody. Under these facts, the use of

7

**DEFENDANTS' MEMORANDUM OF CONTENTIONS
OF FACT AND LAW**

force was reasonable as a matter of law. "de minimis" force is constitutionally reasonable. *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001).

Moreover, based on the above, there is no "bystander liability" for Officer BACON or FOSTER. They did not, and could not, know that any officer was allegedly using unlawful force; and, given the rapidly evolving event, there was no realistic opportunity for either officer to intervene to prevent/stop any alleged unlawful use of force.

Also, any finding that use of force was reasonable also precludes liability under state law (e.g. Battery and Bane Act).

Battery by a police officer is the use of unreasonable force. *Edson v. City of Anaheim*, 63 Cal.App. 4th 1269 (1998) Thus, the same standard applied to both excessive force under the Fourth Amendment and state law battery claims. *Susag v. City of Lake Forest,* 94 Cal.App.4th 1401, 1412-1413 (2002) [holding that it is unsound to distinguish between section 1983 actions and state law battery claim arising from the same conduct]; *Saman v. Robbins*, 173 F.3d 1150, 1155-1157 (9th Cir. 1999) [treating Section 1983 claims and state law battery claims as synonymous).

Cal. Civil Code § 52.1 does not apply because, as discussed above, Plaintiff has not and cannot establish that any defendant interfered "by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state…." A Bane Act claim fails because there was no constitutional violation. See *King v. State*, 242 Cal. App. 4th 265, 294 (2015) (requiring interference with a constitutional right).

Again, the undisputed facts show that Plaintiff suffered no constitutional harm, as the use of force was reasonable as a matter of law, and the officers had probable cause to arrest Plaintiff for the violations of the law they observed and

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

experienced directly.

## 3. THERE IS NO FIRST AMENDMENT PROTECTION FOR PLAINTIFF'S STATEMENTS AND THERE WAS NO RETALIATION FOR PLAINTIFF'S SPEECH

In this case, defendant officers may have told plaintiff that he would detained if plaintiff did not leave, but plaintiff was not actually detained or arrested at that time. Action was only taken toward plaintiff *after* he told the officers that he would use a gun to defend himself against any attempt to detain him.

The First Amendment protects the right of citizens to verbally oppose and/or challenge police action so long as that challenge does not involve a threat or fighting words." *City of Houston v. Hill*, 482 U.S. 451 (1987), cited in *Gulliford v. Pierce County*, 136 F.3d 1345 (9th Cir. 1998). Clearly, threatening to use a gun against police officers is not the type of speech that is protected.

## 4. THERE IS NO SUPERVISORY LIABILITY

Jim McDonnell was the Chief of the Long Beach Police Department at the time of the incident; he was not at the incident location. There is no evidence that he directed the actions toward plaintiff, or, that he was aware of a likely constitutional violation and failed to take action to prevent it.

"[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). "`[T]he term supervisory liability is a misnomer,' since `each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1020 (9th Cir. 2010) (citing *Iqbal*, 129 S.Ct. at 1948)). "To survive summary judgment, [plaintiff] must adduce evidence that [defendants] themselves acted or failed to act unconstitutionally, not merely that a subordinate did." Id. at

9

1020-21.

Thus, McDonnell may only be held individually liable "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation[;] or for conduct that showed a reckless or callous indifference to the rights of others.'" *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991))).

### 5. THERE IS NO *MONELL* LIABILITY

Generally, there is no municipal liability under 42 U.S.C. §1983 unless a municipal employee violates plaintiff's constitutional rights. See *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1021 (9th Cir. 2003). A municipality cannot be found liable under Section 1983 on a respondent superior theory. *Canton v. Harris*, (1989) 489 U.S. 378.

If an underlying constitutional violation is found, the basic rule of municipal liability under 42 U.S.C. § 1983 is that local governments can be sued for relief where the alleged action implements or executes a policy statement, ordinance, or regulation officially adopted and promulgated by that body's officers. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) the Supreme Court stated:

"The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." (original emphasis) Id at 475

U.S. 479-80.

A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee. *City of Oklahoma v. Tuttle*, (1985) 471 U.S. 808, 823-24; *Davis v. City,* 869 F.2d 2230 (9th Cir. 1989).

Plaintiff in this case, has not established the existence of a municipal "policy," "practice," or "custom," that would give rise to a Section 1983 claim.

Moreover, to the extent that plaintiff alleges a "failure to train," the City is only liable if "… its deliberate policy caused the violation alleged." *Blankenhorn*, 485 F.3d at 483 (citing *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 694 (1978)).

In order to establish a failure to train against a municipality, the plaintiff "must show that (1) he was deprived of a constitutional right, (2) the City had a training policy that amounts to deliberate indifference to the [constitutional] rights of the person with whom [its police officers] are likely to come into contact; and (3) his constitutional injury would have been avoided had the City properly trained those officers." *Blankenhorn* at 484 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)

"[f]ailure to train a single officer is insufficient to establish a municipality's deliberate policy." *Blankenhorn*, 485 F.3d at 485. "`[A]bsent evidence of a program-wide inadequacy in training,' any short-fall in a single officer's training `can only be classified as negligence on the part of the municipal defendant — a much lower standard of fault than deliberate indifference.'". Id. (quoting *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994)).

There is no evidence that the City's official policies were not guided by and executed in accordance with the Constitution and cases interpreting the Constitution under these facts, no municipal liability applies.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS
OF FACT AND LAW**

The Long Beach Police Department trains its officers on the law, including the laws of arrest and of using force. The defendant officers received this training. The Long Beach Police Department also complied with the California Commission on Peace Officer Standards and Training requirements as they relate to training officers, such as the defendant officers. The Long Beach Police Department has written policies and procedures, which its officers are trained on and expected to follow, regarding the laws of arrest and use of force. And, Long Beach Police Department supervisors are required to monitor officers' activities, provide ongoing training and guidance, and report and investigate officers' actions.

**5.   THERE IS NO LIABILITY UNDER THE BANE ACT**

A claim under Cal. Civil Code § 52.1, the Bane Act, fails when there is no constitutional violation. See *King v. State*, 242 Cal. App. 4th 265, 294 (2015) (requiring interference with a constitutional right). The undisputed facts show that Plaintiff suffered no constitutional harm, as the use of force was reasonable as a matter of law, and the officers had probable cause to arrest Plaintiff for the violations of the law they observed and experienced directly.

"The essence of a [Civil Code section 52.1] claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation, or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883; see *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334.)

In this case, plaintiff alleges that the Bane Act violation is the alleged use of excessive force (i.e. the *battery*). Courts have held, however, that there is no separate Bane Act liability when the only "coercion" is that inherent in the underlying alleged constitutional violation itself. *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012). Here, there is no separate coercion alleged other than

the alleged use of unreasonable force.

Plaintiff may cite to *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968 (2013) for the proposition that a Bane Act claim can co-exist with an unreasonable force claim. The *Bender* court did not resolve, however, the question of whether a Bane Act claim based on unreasonable force also requires an intentional violation of some right other than the underlying constitutional violation, when an arrest is otherwise lawful (such as in this case). *Bender* involved an arrest that was both unlawful to begin with (i.e., not based on probable cause), and excessive force (there, the arresting officer beat the arrestee after handcuffing him). *Bender* at 978.

The Bender decision was clear, though, that "not every wrongful detention is a violation of the Bane Act. Nor, some federal cases say, is every case of excessive force in the effectuation of an otherwise lawful arrest a violation of the Bane Act." *Bender* at 981. The federal cases[3] cited in *Bender* were those that rejected Bane Act claims based on excessive force during or after arrests that were otherwise lawful, where plaintiffs made no showing of coercion separate from their underlying excessive force claims: *Luong v. City & County of San Francisco*, No. C11-5661-MEJ, 2012 U.S. Dist. LEXIS 165190 ((N.D. Cal., Nov. 19, 2012); *Hunter v. City & County of San Francisco*, 2012 U.S. Dist. Lexis 146492 (N.D. Cal., Oct. 10, 2012)). *See also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (holding that a successful claim for excessive force under the Fourth Amendment provides the basis for, but is not coextensive with, a successful claim under § 52.1).

---

[3] Courts have held that the same standard applies to both excessive force under the Fourth Amendment and state law battery claims. *Susag v. City of Lake Forest,* 94 Cal.App.4th 1401, 1412-1413 (2002) [holding that it is unsound to distinguish between section 1983 actions and state law battery claim arising from the same conduct]; *Saman v. Robbins*, 173 F.3d 1150, 1155-1157 (9th Cir. 1999) [treating Section 1983 claims and state law battery claims as synonymous).

### 6. DEFENDANTS WERE NOT NEGLIGENT; PLAINTIFF WAS

Under the Governmental Tort Claims Act, all tort liability is dependent upon statute. Government Code §815(a) states that a public entity "is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," except as provided by statute. Thus, it is well settled that Plaintiff cannot state a claim of direct liability against a governmental entity unless there exists a specific statute authorizing liability. (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183.) Moreover, the pleadings against a governmental entity must be specific as to the statutory basis giving rise to a particular cause of action. (*Susman v. Los Angeles* (1969) 269 C.A.2d 803; *Searcy v. Hemet Unified School District* (1986) 177 Cal.App.3d 792.)

Direct tort liability of public entities must be based on a specific statute declaring the entity to be liable, or at least creating some specific duty of care; otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles. (*Eastburn v. Regional Fire Protection Authority*, supra, 31 Cal.4th 1175, 1183.)

There is no evidence that defendants owed any duty to plaintiff, because there is no evidence of any special relationship. *Davidson v. City of Westminster* (1982) 32 Cal.3d 197.

Under California law, there is no negligence – because there is no duty to investigate – for "…failure of police personnel to…investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection…" *Williams v. State of California* (1983) 34 Cal.3d 23.

California law shields police officers from ordinary negligence claims based on their response to public safety emergencies. Rather, police officers owe a duty to use reasonable care when employing force. *Munoz v. City of Union City* (2004) 120 Cal. App. 4th 1077, 1099; *Brown v. Ransweiler* (2009) 171 Cal. App. 4th 516

Police officers are not required to use a particular tactic or technique. This limit on a police officer's duty of care to the public is an important recognition of the complicated nature of policing. To hold officers to a duty of due care to use a particular tactic, or employ a particular technique, would place an onerous burden on law enforcement officers and handicap their efforts to save lives. *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077

The officers are also immune from liability under Government Code section 820.4: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

Defendants also contend that plaintiff was negligent. Penal Code section 834a states: "**If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest.**" **Plaintiff threatened to use a gun to defend himself; that threat led directly to force being used against him, and to his arrest.**

**Moreover, plaintiff did not act as a reasonable person would have acted in his situation. The parking lot was full of people, including plaintiff's friend BAEZA. None of those people interfered with an ongoing police investigation, refused to leave the area, threatened police officers with a gun, refused officers' commands, and then resisted being taken into custody.**

### 7.  THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

A police officer's job is difficult and dangerous, often requiring an officer to risk his own life to serve the public. As a regular part of his job, the police officer is required to make split-second, life-and-death decisions. The peace officer has a duty to involve himself in dangerous situations that law abiding citizens actively avoid.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS
OF FACT AND LAW**

Recognizing this fact, federal laws protect police officers from the potentially debilitating effect of lawsuits by providing a qualified immunity. The qualified immunity doctrine protects officers "from liability for civil damages insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 456, U.S. 800, 818 (1982). The immunity applies unless the unlawfulness of the official's action is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1985). "Qualified immunity gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).Defendant officers are entitled to qualified immunity if a reasonable police officer, confronting the same or a similar situation, would not have fair notice that his or her conduct was unlawful. Defendants may properly raise the issue of qualified immunity as a matter of law on motion for summary judgment. *Thorsted v. Kelly*, 858 F.2d 571, 575 (9th Cir. 1988).

If the officers' acts were unconstitutional, they are still entitled to qualified immunity because they reasonably believed that the acts were constitutional under the circumstances.

Qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. (Emphasis Supplied) Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

The Supreme Court has given further instruction on this standard by stating that, viewed in light of pre-existing law, the unlawfulness of the official action must be apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1985). The standard therefore provides that "regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the appellant was "not clearly

1 established" or the officer could have reasonably believed that his particular conduct
2 was lawful." *DeNieva v. Reyes*, 966 F. 2d 480, 484-85 (9th Cir. 1992) (quoting
3 *Romero v. Kitsap County*, 931 F. 2d 624, 627 (9th Cir. 1991)).

4     Moreover, the Supreme Court in *Hunter v. Bryant*, 502 U.S. 224 (1991),
5 stated that "qualified immunity gives ample room for mistaken judgment by
6 protecting all but the plainly incompetent or those who knowingly violate the law."
7 Id. at 229. "Where an officer's particular use of force is based on a mistake of fact,
8 we ask whether a reasonable officer would have or should have accurately perceived
9 that fact." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1086 (9th Cir.1998).

10     This case emphasizes the broad protection that qualified immunity affords
11 law enforcement officers. Reasonable and conscientious police officers, required to
12 make split second decisions under stressful and rapidly evolving situations, would
13 hardly be aware that their conduct violated a clearly established constitutional right
14 where they have probable cause to believe they are facing a deadly threat. In fact,
15 "[a]s the qualified immunity defense has evolved, it provides ample protection to all
16 but the plainly incompetent or those who knowingly violate the law . . ." *Malley v.*
17 *Briggs*, 475 U.S. 335, 341 (1986) (emphasis supplied). Police Officers will not be
18 immune, if, on an objective basis, it is obvious that no reasonably competent officer
19 would have concluded that a use of force was required; but if officers of reasonable
20 competence could disagree on this issue, immunity should be recognized. *Malley v.*
21 *Briggs*, 475 U.S. 335, 341 (1986) (emphasis supplied).

22     While qualified immunity is typically sought before trial, defendants may still
23 seek qualified immunity before the case is submitted to a jury. *Tortu v. Las Vegas*
24 *Metro. Police*, 556 F.3d 1075 (9th Cir., 2009). Qualified immunity may be sought
25 as part of a FRCP 50(a) motion. Id.

26

27     **III.    BIFURCATION OF ISSUES**
28     Defendants seek bifurcation of *Monell* liability, if any, and the punitive

damage issue (assuming this has been properly pled). Defendants will file a motion in limine to bifurcate.

Any *Monell* claim should be bifurcated. There is no tangible benefit to plaintiff, and there is real danger of unfair prejudice to defendants. The danger of undue consumption of time and confusing the issues also substantially outweighs any reason to have a single liability phase.

*Monell* liability can only be present if there is a constitutional liability, the City is not liable under respondeat superior for 1983 violations, and the defendant officers are indemnified for compensatory damage awards against them; accordingly, plaintiff will not be entitled to any extra award even if *Monell* liability is found.

Further, there are potentially at least <u>thirty-two</u> *Monell* witnesses, not including the defendant officers themselves. The *Monell* evidence would swamp the individual liability evidence.

Given the reality of *Monell* liability, *Monell* evidence (e.g. other acts of LBPD officers) is the type of evidence where the probative value is substantially outweighed by the substantial risk of unfair prejudice. F.R.E. 403 And, defendants have moved *in limine* to exclude such evidence.

Finally, defendants contend that any punitive damages phase – other than asking the "entitlement" question on the special verdict form (e.g. "did any defendant officer act with malice…?") should be bifurcated. Punitive damages are not available unless liability is determined – and then only for certain causes of action. To require the officers to testify about their finances in the liability phase is an extreme invasion of privacy, as well as an undue consumption of time.

### IV. JURY TRIAL

A jury trial was demanded.

## V. ATTORNEY FEES

The defendants agree to a reservation of the Court's jurisdiction for the purpose of determining, after trial, the amount of attorney's fees, if any, to be granted to the prevailing party.

DATED: March 28, 2017

CHARLES PARKIN, City Attorney

By: */s/ HOWARD D. RUSSELL*
HOWARD D. RUSSELL
Deputy City Attorney
Attorneys for Defendants
CITY OF LONG BEACH, et al.

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach. CA 90802-4664